192 

(No. 42081.—)

*In re* ESTATE OF RICHARD BARNES STITH.—(THE UNIVERSITY OF ILLINOIS *et al.*, Appellants, *vs.* SIGNA MARIE STITH, Appellee.)

*Opinion filed March 24, 1970.—Rehearing denied May 26, 1970.*

CULBERTSON, J., took no part.

DAVIS, MORGAN & WITHERELL, of Peoria, (DONAN C. KIRLEY, of counsel,) for appellants University of Illinois and University of Nebraska.

RICHARD H. RADLEY, of Peoria, for appellants University of Southern California and California Institute of Technology.

ARTHUR B. COPELAND, of Peoria, for appellant Shriners Hospital for Crippled Children.

McDermott, Will & Emery, of Chicago, Belli, Ashe, Ellison, Choulos & Lieff, of San Francisco, California, and Heyl, Royster, Voelker & Allen, of Peoria, (Melvin M. Belli, Hamilton Smith, William J. Voelker, Jr., Robert L. Lieff, and James E. Betke, of counsel,) for appellee.

Mr. Chief Justice Underwood delivered the opinion of the court:

Signa Marie Stith, the widow of Richard Barnes Stith, obtained three extensions of time within which to renounce her deceased husband's will. The validity of those extensions was subsequently challenged by certain charities (appellants here) who are the residuary beneficiaries under the will. The circuit court of Marshall County vacated the second and third extensions, the Appellate Court for the Third Judicial District reversed the vacation order (105 Ill. App. 2d 429), and we granted leave to appeal.

The controlling statute is section 17 of the Probate Act (Ill. Rev. Stat. 1965, ch. 3, par. 17) and the pertinent portions specify the time for renunciation as follows: "* * * (a) within ten months after the admission of the will to probate or (b) within such further time as may be allowed by the probate court if, within ten months after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a verified petition therefor setting forth that litigation is pending that affects the share of the surviving spouse in the estate."

All three verified petitions for extension alleged the existence of pending litigation in both Illinois and Nebraska affecting the widow's share of the estate. They were filed and allowed in *ex parte* proceedings consented to by the executor; the first extension order, entered August 30, 1965, extended the time for filing to February 5, 1966; the second such order was entered February 3, 1966, and extended the time to February 5, 1967; the third, entered January 5,

1967, extended the time until 90 days after termination of a pending will construction suit filed by the testator's son. Vacation of those orders was sought by a petition filed August 28, 1967, which alleged the extensions had been obtained by false and fraudulent allegations as to the pendency of litigation when in fact no litigation in either Illinois or Nebraska was then pending.

It is sufficient for our purposes, without extending this opinion by detailing the facts, to state that some of the allegations as to pending litigation contained in appellee's petitions for extensions were clearly false. It is equally clear, however, that there were undisposed of claims filed in the circuit court of Marshall County against testator's estate in the amount of some $29,000 and an undisposed-of claim in the Nebraska ancillary administration proceedings amounting to some $11,000 at the time the first petition for extension was filed and allowed. At the time the second petition for extension was filed, those claims had been allowed with the executor's consent. The period within which an appeal could be taken from allowance of the Illinois claims had not then expired.

In a comprehensive and well reasoned opinion the trial court held the claims constituted "pending litigation" within the meaning of the statute. We agree with that determination. The procedure established by the Act for disposition of claims suggests that claims are within the traditional concept of "litigation", providing as it does for notice, pleadings, trial, and appeal. (Ill. Rev. Stat. 1965, ch. 3, pars. 195, 196, 197, 329.) Moreover, the processing of claims is clearly a matter which "affects the share of the surviving spouse in the estate," (Ill. Rev. Stat. 1965, ch. 3, par. 17) and thus fits squarely within the rationale of section 17, which was designed to provide sufficient time "to enable [a widow] to determine the condition of the estate and which course would be more tdvantageous to her." (*Canavan* v. *McNulty*,

328 Ill. 388, 396; accord; *First National Bank of Danville* v. *McMillan,* 12 Ill.2d 61, 66; *In re Estate of Donovan,* 409 Ill. 195, 202; *Stone* v. *Vandermark,* 146 Ill. 312.) The provision allowing for an extension of the time for renunciation obviously furthers this policy. "For a number of reasons it may be impossible at the expiration of the ten-month period for the surviving spouse to make an intelligent choice between the provisions of the will and the statutory share granted by section 16. Claims filed at the proper time may still be undisposed of and the construction of language used in the will or a question of the abatement of legacies may be in litigation the outcome of which would affect the share of the surviving spouse under the will. The evident purpose of the provision for the alternative period is to enable the surviving spouse in these and similar situations to elect the course that is most advantageous." (1 James, Illinois Probate Law & Practice (1951), Comment, § 17, p. 268.) Thus, where substantial claims against an estate are undisposed of, and their disposition affects the surviving spouse's decision on the question of renunciation, it is clearly contemplated under secton 17 that an extension of time be permitted. This construction is particularly appropriate in view of the provision's basic purpose, which is "to confer privileges and to prevent impositions upon the surviving spouse * * *." *First National Bank of Danville* v. *McMillan,* 12 Ill.2d 61, 66.

The narrow issue before us, however, is whether the trial court was correct in its further holding that litigation was not "pending" during the 30-day period within which an appeal might be taken as a matter of right from the judgments allowing the claims. If the trial court was correct, these claims would have ceased, at the instant of entry of judgment, to be pending litigation affecting the widow's share of the estate. If this be true, and the second granted extension thus nullified, the otherwise admittedly valid third

extension must also fail since the widow's petition would then not have been filed within the period for which a valid extension was granted.

There have been many instances in which the question of when litigation ceases to be "pending" has been considered. In each instance, the paramount consideration has been to achieve the most reasonable result in the particular context; frequently, it has been determined that litigation is "pending" until the time for appeal has passed. (See, *e.g.*, *Agnew* v. *Brall*, 124 Ill. 312; *City of Lewiston* v. *Hummel*, 38 Ill. App. 326; *United States* v. *United Air Lines, Inc.* (E. D. Wash. & D. Nev. 1962), 216 F. Supp. 709; *Kissell* v. *Creel* (D. D. C. 1949), 83 F. Supp. 799; *In re Mackay* (Alaska 1965), 416 P.2d 823; *Record Mach. & Tool Co.* v. *Pageman Holding Corp.* (1959), 172 Cal. App. 2d 164, 342 P.2d 402; *Southern Title Research Co.* v. *King* (Fla. App. 1966), 186 So.2d 539; *In re Lee's Estate* (1949), 240 Ia. 691, 37 N.W.2d 296; *State* v. *Jager* (N. D. 1958), 91 N.W.2d 337.) It appears that in the context of section 17, the more reasonable construction of the term "pending" is that which encompasses the 30-day period during which any party feeling himself aggrieved by the allowance of claims may appeal. (Ill. Rev. Stat. 1965, ch. 3, par. 329.) While appellant urges that the executor's consent to the claims dispelled the possibility of appeal, we note that the Probate Act provides for an appeal from any probate proceeding involving more than $3,000 "by any person who considers himself aggrieved". (Ill. Rev. Stat. 1965, ch. 3, par. 329.) Thus, the mere allowance of claims was not necessarily a conclusive action upon which the widow's decision on the matter of renunciation should be required to rest, since numerous persons might have appealed from the judgment notwithstanding the executor's consent. Therefore, we are of the opinion that appellee's verified petition, filed during the appeal period from the allowance of substantial claims, properly stated that litigation was pending which affected her

share in the estate. For this reason, we affirm the judgment of the Appellate Court for the Third Judicial District.

*Judgment affirmed.*

Mr. Justice Culbertson took no part in the consideration or decision of this case.